IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30695
Summary Calendar
_____

OTHA THOMAS,

Plaintiff-Appellant,

versus

CITY OF MONROE, ET AL.,

Defendants,

CITY OF MONROE; GUTIERREZ, Police Officer;
B. POWELL; E. THOMPSON,

Defendants-Appellees.

_____

Appeal from the United States District Court for
the Western District of Louisiana
(94-CV-1072)
_____

August 19, 1998

Before REAVLEY, HIGGINBOTHAM and JONES, Circuit Judges.

PER CURIAM:[*]

Plaintiff Otha Thomas filed a lawsuit alleging excessive

police force in violation of 42 U.S.C. § 1983, the Fourth and

Fifteenth Amendments, and state law negligence.  The jury found

in favor of the defendants, the City of Monroe and three city

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

police officers.  Thomas appealed.  For the reasons stated below, we affirm.

## Background

On June 28, 1993, Otha Thomas was arrested for disturbing the peace at his residence at the Windsor Inn, in Monroe, Louisiana.  The arresting officers were Vincent Guiterrez, Billy Powell, and Exlena Thompson of the Monroe Police Department.

That night, Cathy Colvin, an employee of the Windsor Inn, received complaints from tenants that an intoxicated person was making loud noises and knocking on doors.  She called the security guard, Anthony Washington, and sent him to check on the matter.  Washington called Colvin and suggested that she call the Monroe Police Department, which she did.

Guiterrez was dispatched to the Windsor Inn and met his backup, Powell and Thompson, near Thomas's apartment.  The events after that point are contested.  The officers and Washington testified that Thomas invited the officers in, there was a minor tussle when he resisted arrest, and then they handcuffed him and took him to the station.  Thomas testified that he did not invite them in, but came out to the parking lot, where one of the officers hit him from behind on the neck, causing him to fall down, and then hit him again while he was on the ground, finally dragging him to the car.

At the jail, the jailers refused to book Thomas because he was too intoxicated.  The officers then took Thomas to the

2

hospital and waited until they were told that he would not be released that night.  Thomas was diagnosed with a spinal injury that has seriously handicapped him since.  Thomas's blood alcohol level when he was checked into the hospital was 254 MG/DL.

## Discussion

"[A] jury verdict will not be overturned unless the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable [jurors] could not arrive at a contrary verdict."[1]  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ...."[2]

## A.    Sufficiency of the evidence

1.    *Did the jury err in finding in favor of the defendants on the question of excessive force?*

The elements of an excessive force claim are (1)the plaintiff suffered an injury, (2) which resulted directly and solely from the use of force that was clearly excessive to the

---

[1]*Reeves v. AcroMed Corp.*, 103 F.3d 442, 445 (5th Cir. 1997) (quoting *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969)).

[2]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

3

need; and (3) the excessiveness of the force was objectively unreasonable.[3]

Thomas testified that he had been drinking during the evening and felt dizzy while walking to his apartment from the grocery store. He knocked on doors, trying to get someone's attention, and then had to sit down for a while. After a few minutes, he got up and went inside. According to Thomas, when the officers arrived, Thomas went outside to the parking lot in front of his apartment -- the officers were never in his apartment that night. He stated that one of the officers struck him from behind for no reason and while he was on the ground they stepped on his hand and struck him on the feet and shoulders. He testified that the officers then stood him up and let him fall several times, as he could not stand on his own. Thomas' wife, who was not present at the scene, testified that she later noticed that the shorts he had been wearing were stained with grease and dirt.

The officers and the security guard testified that the incident occurred in Thomas's apartment. All testified that Thomas opened the door, left it open, and then either verbally invited the officers or waved them in. All testified that Thomas offered "mild" or passive resistance, jerking his arm away from Guiterrez when Guiterrez advised him he was under arrest and grabbed his arm. When Thomas jerked his arm away, they both fell onto the bed. The four accounts were slightly inconsistent on

[3]*Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993).

4

the question of whether Thomas and Guiterrez rolled from the bed to the floor or remained on the bed.  All four testified that the only force used was to restrain Thomas long enough for him to be handcuffed.  They stated that Thomas was carried, not dragged, from the apartment to the car and then to the jail.

The only other evidence presented was medical testimony. Thomas called both Dr. Armistead and Dr. Nanda, experts in the field of neurology.  Dr. Armistead examined Thomas six months after the incident for disability purposes, and again just before trial.  Dr. Armistead testified that Thomas had a congenital spinal condition with degenerative changes which made him predisposed to injury from trauma.  When asked if a spinal contusion could result if a person with Thomas' condition slipped and fell, he agreed it was possible, though later said it was not likely.  He agreed that the following hypothetical, proposed by defense counsel, was possible: An intoxicated man falls while walking, causing a trauma to his spinal cord, such that he cannot move for two or three minutes; then he gets back up and continues to his apartment; then sometime later the edema (swelling) from the trauma has reached a point to where it is now impinging on the spinal cord which could in turn cause a new onset of paralysis.

Dr. Nanda examined Thomas when he arrived at LSU Medical Center in Shreveport the day after the incident and treated him during his stay there.  Dr. Nanda testified that any kind of fall or injury could have caused Thomas' injury: "Anything, you know.

5

You can slip and fall and that is trauma.  Any form of violent action is trauma, really I mean.  But it can depend.  Sometimes a minor trauma can cause it; sometimes a severe trauma can cause it."  The defense's theory was that Thomas injury was caused either by a slip and fall earlier in the evening, at the time Thomas said he was dizzy and had to sit down, or by falling off the bed during the scuffle with Guiterrez.  Neither version involves excessive force on the part of the police.

The experts' testimony could support either party's version of the events.  The issue reduces to one of credibility.  Such questions are the quintessential function of the jury.  As this Court has stated "[t]he jury heard both sides and the jury spoke. ... There were clearly two sides to this case.  The jury believed Haun and his evidence; it did not believe Ideal.  Consequently, the jury's verdict ... is affirmed."[4]

2.  *Did the jury err by finding in favor of the defendants on the issue of negligence?*

Thomas argues that the jury could not have reasonably found in favor of the defendants on the negligence claim because the police officers owed a high level of care to him.  When an intoxicated person is taken into custody, a greater degree of care is owed to him.[5]  However, this does not mean that officers

---

[4]*Haun v. Ideal Indus. Inc.*, 81 F.3d 541, 547 (5th Cir. 1996) (citation omitted).

[5]*Barlow v. City of New Orleans*, 241 So.2d 501, 504 (La. 1970).

6

become strictly liable for injuries, nor does the severity of the condition determine that it was caused by negligence. The standard is "reasonableness under the totality of the circumstances."[6] Thomas' claim for negligence rests on the same evidence as his claim of excessive force. As discussed above, the evidence was sufficient to support the jury's finding for the defendants.

## B. Procedural objections

Thomas argues that there were several procedural errors during the trial. The defendants argue that the procedural issues raised by Thomas cannot be considered because they were not referred to in the notice of appeal, citing *C.A. May Marine Supply Company v. Brunswick Corp*oration.[7] However, *May Marine* and the cases which follow it deal with the situation where the appellant appealed one of two separate orders in a case, or a motion was made after judgment had been entered. In this case, Thomas' notice of appeal stated that he was appealing "the Order entered in this action on June 10, 1997, in favor of City of Monroe, Vincent Guiterrez, Billy Powell, and Exlena Thompson, denying plaintiff's claims after trial by jury." Rule 3(c) requires that the notice of appeal: (1) specify the parties taking the appeal by naming each appellant; (2) designate the

---

[6]*Mathieu v. Imperial Toy Corp.*, 646 So.2d 318, 322 (La. 1994).

[7]649 F.2d 1049 (5th Cir. 1981).

7

judgment, order, or part thereof appealed from; and (3) designate the court to which the appeal is to.  Thomas's notice was sufficient to cover the procedural issues that he had objected to during the trial leading up to the judgment being appealed.

1.  *Did the trial court err in the jury instructions?*

Thomas argues that the court erred in several respects during the jury instructions.  An appellant must demonstrate that the charge as a whole created substantial and ineradicable doubt whether the jury was properly guided in its deliberations.  Even if the instructions were erroneous, the verdict will not be reversed if, based upon the entire record, the challenged instruction could not have affected the outcome.  Further, if the challenger to the instruction proposed another instruction to the court, their proposed instruction must have correctly stated the law.[8]

a.  *By not instructing the jury on a citizen's purported right to resist an illegal entry?*

Thomas requested an instruction that a citizen has a right to resist an illegal entry into one's domicile, citing Louisiana Revised Statute 14:18 and 14:19 in support.  After discussion in chambers, the court denied the request.  Revised Statute 14:18 provides statutory justification for certain acts, including when

---

[8]*Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763 (5th Cir. 1997); *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1318 (5th Cir. 1994).

the offender's conduct is in defense of persons or property under any of the circumstances described in Articles 19 through 22. Regarding defense of property, Revised Statute 14:19 provides justification in defense of "a forcible offense or trespass" against property.

In this case, there was no evidence of "forcible offense or trespass." Thomas testified that the officers never entered his apartment. All the other witnesses testified that Thomas left the door open and invited the officers in, verbally or with a hand motion. Even if the statutes could be used to support the requested instruction, which is not clear, it could not have affected the outcome of the case.

b. *By not instructing the jury on res ipsa loquitur?*

The Supreme Court set out the standard for *res ipsa loquitur* in *San Juan Light & Transit Co. v. Requena*:

> [W]hen a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care.[9]

To be applicable, the plaintiff must show that the thing which caused the injury was under the exclusive control of the defendant or that the defendant has superior means for

---

[9]224 U.S. 89, 98-99 (1912)

determining the cause of the accident.[10]  Neither factor is present in this case.  The evidence showed that Thomas was injured sometime that night, and both experts agreed that it could have occurred before the police even arrived, by his falling due to his intoxicated condition.  The mere fact that an injury occurred and the parties disagree as to the cause does not merit an instruction on *res ipsa loquitor*.

c.  *By not instructing the jury on conditions for police entry?*

Thomas argues that the trial court erred in refusing to give a jury instruction that police may enter a dwelling only when armed with a warrant, consent or when exigent circumstances exists.  However, the trial court did so instruct the jury.  Thomas's brief quotes the court's statement that the police may forcibly enter a dwelling to make a lawful arrest; this was in the context of "emergency situations" and does not detract from the court's clear statement of the requirements for police entry.

2.  *Closing arguments*

Thomas argues that the court erred in its rulings on two objections during closing arguments.  When reviewing claims based on alleged improprieties in closing arguments, the entire argument should be reviewed within the context of the court's ruling on objections, the jury charge, and any corrective

---

[10]*Id.; Fruge v. Penrod Drilling Co.*, 918 F.2d 1163, 1167 (5th Cir. 1990).

10

measures applied by the trial court.[11]  Alleged improprieties may be cured by an admonition or charge to the jury.[12]

a.  *Rejecting plaintiff's objection to defendants' argument*

Counsel for the officers stated during closing that "[m]ost people are very respectful to police officers, and when one knocks on the door, they generally invite them in. ... You hear all the time of stops made on the interstate where the driver of the vehicle invites the police to search their vehicle." Thomas's counsel objected, and defense counsel responded that "It's an analogy on my part, not a fact in evidence."  At that point, the judge stated "Well, I'll instruct the jury that there has been no evidence of any such things that happen.  What counsel says is not evidence."  The jury instructions given afterward included an instruction that "statement and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions."

Defense counsel's comment was immediately offset by the judge's statement in the jury's presence that the attorney's statements were not evidence, which was later emphasized in the jury instructions.  Any impropriety was sufficiently cured.

_____

[11]*Guaranty Serv. Corp. v. American Employers' Ins. Co.*, 893 F.3d 725, 729 (5th Cir. 1990).

[12]*Id.*

11

b.  *Sustaining objection to plaintiff's closing arguments*

In his closing, counsel for Thomas stated, "It's kind of odd, that Guiterrez left the hospital at 3:30 in the morning and the first report of the police beating up Mr. Thomas is at 4:00 a.m." Defense counsel objected in order to clarify that the mention of a fight was in the hospital record, not a police report. Thomas's counsel then stated that the statement in the report had been made by Thomas. Defense counsel objected again because there had been no evidence that Thomas made any statement at the hospital that night. The trial court sustained the objection.

Thomas's counsel argues that he was prevented from making the important point that Thomas feared the police and made no report until after the police left. However, he made no attempt to get facts to support this argument into evidence during the trial; he neither asked Thomas whether he had made such a statement nor did he call anyone from the hospital to testify. Instead, counsel attempted to introduce the evidence himself during his closing, which was properly objected to and sustained by the court.

3.  *Did the court err in not accepting Ed Allen as an expert witness?*

The trial court's refusal to allow a proffered expert to testify is reviewed for abuse of discretion.[13] Federal Rules of Evidence 702 provides that a witness may be qualified as an expert based on any of the following: knowledge, skill, experience, training or education.[14]

In this case, Allen was tendered as an expert in the area of police conduct relative to entry of a residence, use of force, excessive force and standards of care for custody of intoxicated people. Allen has over 20 years of experience as a deputy sheriff, but testified that he had not dealt in those areas very often, he did not instruct people in those areas, and he had no special training in those areas. The trial court determined that Allen was not qualified as an expert in those areas.

Thomas basically argues that years of experience as a police officer qualify that officer as an expert in any area of law enforcement, citing *Satcher v. Honda Motor Company*.[15] However, in *Satcher*, the officer who testified had experience in the specific area at issue -- he testified on lower leg protection in motor cycle accidents, and he had investigated hundreds of motorcycle accidents. General experience as a police officer, standing alone, is not sufficient to qualify the officer as an expert in every area of law enforcement, and the trial court did

---

[13]*Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1109 (5th Cir. 1991).

[14]*See Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993).

[15] 52 F.3d 1311, 1317 (5th Cir. 1995).

not abuse its discretion in ruling that Allen was not qualified to testify as an expert in the areas at issue in this case.

Sufficient evidence supports the jury's verdict, and the lower court did not err in its rulings during the trial.  The trial judge's entry of judgment in accordance with the jury verdict is AFFIRMED.